NEW-YORK,
May, 1808.

Mason
v.
Franklin.

## Mason and Smedes *against* Franklin and Franklin.

Where a bill was drawn on a person, at *Liverpool* payable in *London*, and the bill was duly presented at *Liverpool* and protested for non-acceptance, and afterwards protested for non-payment, at *Liverpool*, where the drawee resided, it was held, that the holder had a good cause of action against the drawer on the protest for non-acceptance; that it is not necessary to set forth the protest for non payment in the plaintiffs' declaration, and if done, it may be rejected as surplusage on a demurrer; that the protest for non-payment at

THIS was an action of *assumpsit*, against the defendants, as indorsors of a bill of exchange. The declaration, in substance, stated, that one *John Franklin*, on the 1st of *August*, 1807, drew his bill of exchange on Messrs. *Rathbone, Hughes* and *Duncan*, of *Liverpool*, requiring them to pay, sixty days after sight, to *Franklin, Robinson & Co.* or order, in *London*, 185*l*. 3*s.* 2*d.* sterling; which bill was indorsed by the payees to the defendants, and by them to the plaintiffs; that on the 16th *September*, 1807, the bill was presented to the drawees at *Liverpool*, for acceptance, but they refused to accept the same, upon which it was protested for non-acceptance at *Liverpool*, of which the defendants had notice; that afterwards, on the 18th of *November*, 1807, the said bill was presented to the said *Rathbone, Hughes & Duncan*, at *Liverpool*, who were requested to pay the same, according to the tenor and effect thereof, and of the indorsements thereon, to wit, at *Liverpool*; but that the said *Rathbone, Hughes & Duncan*, neglected and refused to pay the bill, upon which the said bill was, in due form of law, and according to the usage and custom of merchants, protested at *Liverpool* aforesaid, of which said several premises, the defendants, af-

*Liverpool* was sufficient, as no place of payment was designated in *London*, and that the holder might, at his election, cause the bill to be protested for non-payment in *London*, or at the place where the drawee resided.

forwards, to wit, &c. had notice. By reason whereof, &c. The declaration also contained the usual money counts, and an *insimul computassent*. To the first count in the declaration there was a special demurrer, and joinder. The causes of demurrer assigned were, that there was no allegation in the declaration, that the bill was shown or presented in *London*, where it was made payable; nor that the plaintiffs made any search or inquiry, or used any diligence to find any person in *London*, to whom to present the same for payment; nor that they caused the bill to be protested at *London* for non-payment, according to the usage and custom of merchants. To the other counts in the declaration there was a plea of *non assumpsit*, and issue thereon.

*Colden*, in support of the demurrer. The bill in this case being made payable in *London*, it was the duty of the holder to present it at that place,* to have made some inquiry after the drawees or some person to pay the bill; and if no person was to be found, a protest should have been made in *London*, stating that inquiry had been made there, but that no person was to be found to pay the bill. A protest at *Liverpool* is a mere nullity. It is no answer to say, that no place in *London* is designated in the bill for the payment of it. The protest should state that some inquiry had been made there, at the royal exchange,† or some place where merchants usually meet, for the drawees, and that they could not be found. So if the drawee be dead, the holder should inquire after his personal representative and present the bill to him.‡ It should appear that the holder has done every thing in his power to get the bill accepted and paid according to its tenor. I am aware that it will be said, that as the bill was regularly protested for non-acceptance, the plaintiff had a right to recover on that protest. But the plaintiff has not only set out the protest for non-acceptance, but has gone further, and stated the protest for non-payment, and having done so, he is bound to show that the presentment for payment

* *Chitty*, (2d Ed.) 185. 2 *Hen. Black.* 509. *Bayley*, 58.

† *Marius*, 26. 33.

‡ *Chitty*, (2d Ed.) 125, 126. *Bayley*, 58, 59.

NEW-YORK,
May, 1808.

Mason
v.
Franklin.

* Comyns, Plea-
der, (c. 29.)

† Chitty, (2d.
Ed.) 108. 181.
Kyd, 137.
Beawes, 460.
‡ 7 Term, 581,
582.

§ 28. 125.

** Chitty, (2d.
Ed.) 202.
†† 2 H. B. 509.

and protest were regular. It was not necessary, perhaps, to state the protest for non-payment. But if that has been improperly made, it will destroy his action.*

The right of action for the non-acceptance of a bill, is founded on the implied *assumpsit* arising from the face of the bill, and is liable to be defeated by the subsequent neglect of the holder ; for it is his duty, notwithstanding the protest for non-acceptance, to present it again for payment.† There is an implied or tacit engagement on the part of the holder, to call on the acceptor for payment.‡

*Brinckerhoff*, contra. The general rule no doubt is, that the bill must be presented to the *drawee*. The only case which I find analogous to the present is that of a presentment for acceptance. If the drawee of a bill, says *Chitty*,§ cannot be found at the place where the bill states him to reside, and it appears that he never lived there, or that he has absconded, the bill is to be considered as dishonoured. Here the bill was presented to the drawee at *Liverpool*, who refused to accept it, according to its tenor and effect. It was a refusal to pay it at all, either at *London*, *Liverpool*, or at any other place. It would be of no possible advantage after this refusal, to send the bill to *London* to be protested for non-payment. The law will not require a party to do a useless or nugatory act. The bill was presented and protested according to the usages and customs of *Liverpool* and *London*, and local usages in such cases are to be observed.** The case of *Saunderson* and others v. *Judge*,†† cited on the other side, was the case of a promissory note, and a special memorandum was made on the note, that it was to be paid at a particular house.

*Harison* in reply. It is not denied that an action will lie against a drawee on a protest for non-acceptance, nor that the bill may be presented for acceptance at any place where the drawee may be found, the acceptance being a personal act. But the question is, can a bill be protested for non-payment at any other place than that in which it is made payable. The presumption is that the drawer has provided funds for the payment at that place. He has the

right to fix the place of payment, and the payee takes the bill on the condition of receiving his money at the place designated. The rights of the drawer, in this respect, cannot be varied by the acts of the drawee, or a third person. The plaintiff's right of action on the protest for non-acceptance may have been complete at the time, but it was liable to be defeated by a subsequent default. If the plaintiff had stated only the protest for non-acceptance, the subsequent steps would be presumed to be regular until the contrary was shown, but having thought proper to set out the protest for non-payment, he is bound to show that he has performed his duty, by presenting the bill for payment at the place fixed by the parties. It is a part of the contract between the drawer and payee, and the holder must present the bill, according to the terms of it, where it is made payable. There may be some local usages as to days of grace, or of hours of business at a particular banking house, where the bill is to be paid, which may govern ; and such local usages must always be shown. But where the general law of merchants is clear and fixed, no particular usage can vary or controul it.

KENT, Ch. J. delivered the opinion of the court. This is a suit upon a foreign bill of exchange, drawn in this city, upon *Rathbone, Hughes & Duncan*, merchants at *Liverpool*, and payable sixty days after sight in *London*. The declaration states, that the bill being regularly indorsed to the plaintiffs, was presented to the drawees for acceptance, but that they refused, and that the same was accordingly protested at *Liverpool* for non-acceptance, and notice given to the defendants ; that the bill when due and payable, was presented to the drawees at *Liverpool* for payment, who refused to pay the same, and that it was then protested at *Liverpool* for non-payment, and notice thereof also given. To this declaration the defendants demurred specially, and stated for causes of demurrer, that the declaration does not allege that the bill was presented in *London* for payment, or that the plaintiffs made inquiry, or used diligence to find any per-

NEW-YORK,
May, 1808.

Mason
v.
Franklin.

son in *London*, to whom to present the bill for payment, or that the said bill was, according to the custom of merchants, protested in *London*.

Upon this record, we are of opinion that a good cause of action arose upon the protest for non-acceptance, and were we to admit that the subsequent demand of payment and protest for non-payment were void acts, by being made at *Liverpool*, they would not destroy the right to recover which had previously vested ; *utile per inutile non vitiatur ;* that part of the declaration containing the subsequent demand and protest might in such case be rejected upon demurrer, as surplusage.    But we are of opinion, that as no place of payment in *London* was designated, the demand for payment and protest for non-payment, were well made upon the drawees personally, at *Liverpool.*  It would have been a very idle act for the holder to have gone into *London* to make inquiry, when no place in *London* was pointed out in the bill, and when the drawees resided at *Liverpool,* and had refused to accept the bill.   The law-merchant has not pointed out any particular spot in *London* for such inquiries, and to have attempted it at large would have been the heighth of absurdity.  The common law in general, and especially the commercial law, which forms a distinguished branch of it, is founded on the principles of utility and common sense ; and it would be truly surprising, and repugnant to the very spirit of the system, if an inquiry so senseless was requisite to consummate the right of the holder of the bill. It must be a sound rule, that where no particular place of payment is fixed, a demand upon the drawee personally, is good.  A general refusal to pay, was a refusal to pay according to the face of the bill.   It was equivalent to a refusal to pay in *London.*  We do not mean to say, that the demand of payment at *Liverpool* was indispensable. The bill being payable at *London,* it would have been sufficient for the holder to have been there when the bill fell due, ready to receive payment.  In the present case, a protest at *London*, or a demand and protest at *Liverpool*

were sufficient, and the holder might take either course. The holders elected to demand payment of the drawers personally, at *Liverpool*, and to cause the bill to be protested there, and the plaintiffs accordingly did all that in reason or law can be required to fix the antecedent parties to the bill.

We are, therefore, of opinion that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.