## The Exeter Bank *vs.* John T. Gordon.

Where a draft has been protested for non-acceptance, the holder is not bound to present it at maturity, for payment.

Where an agent receives the negotiable note of a third person from his principal, with authority to collect and apply the proceeds to the payment of a debt due from the principal to the agent, if the contents of the note are lost by the fraud or negligence of the agent it will operate as a payment of the debt of the principal.

But if in such a case the agent, by a compromise, on the whole advantageous to all parties, release the third person on receiving one half the debt, in such a case the release will not operate as a payment of the debt of the principal beyond the amount received by the agent, although the compromise was made without the authority of the principal.

Trover. This action was tried upon the general issue at February term, 1834, when it appeared that the defendant, being possessed of the articles mentioned in the declaration, on the 9th of February, 1826, by his deed conveyed the same to the plaintiffs, under a condition that if he should pay them one thousand dollars, according to the tenor of his note of hand, dated April 1, 1822, and made payable in sixty days from said date, with interest after, then the deed to be void.

It further appeared, that the goods were left in the possession of the defendant, who being requested, previous to the commencement of this action, to deliver the same to the plaintiffs, refused so to do.

It also appeared, that at the August term of the court of common pleas in this county, 1826, the plaintiffs recovered judgment against the defendant and John Gordon and Stephen L. Gordon, for $3,295 23 debt, and $8 41 costs of suit. This judgment was rendered on several notes, one of which was for $1000, dated April 1, 1822, made by the defendant and S. L. Gordon and John Gordon, payable to the plaintiffs, on demand, with interest after sixty days; and it

appeared that the Exeter Bank had no other note or demand against Stephen L. Gordon, except those on which the judgment was founded. Execution issued upon the judgment, and was returned satisfied in part, viz : for the sum of $720 58. There was endorsed upon the execution, November 17th, 1826, a payment of $29 62 ; and on the 29th of August, 1826, another payment of $1,508 32, leaving a balance due on the execution of $1,045 12.

On the 9th of February, 1826, Stephen L. Gordon, John Gordon, and John T. Gordon, failed, and Stephen L. Gordon endorsed and delivered to the cashier of Exeter Bank two drafts on H. G. Nelson, drawn by himself, and payable to his own order, one for $1000, payable in four months, the other for $400 payable in sixty days; "the net proceeds of which drafts, after deducting all expenses, charges and commissions, were to be applied to the payment of such of the debts due to the bank as the directors should select."

These drafts were forwarded by the Exeter Bank to Fayetteville, in North-Carolina, where Nelson resided; were duly presented and protested for non-acceptance and for non-payment; and notice of non-acceptance, but not of non-payment, given to Stephen L. Gordon, and they have never been paid.

On the 23d of August, 1826, subsequently to the return of the drafts under protest, Stephen L. Gordon, on the application of the cashier of the bank, and after full knowledge of the circumstances, endorsed and delivered to the cashier of the bank, a note of hand signed by said H. G. Nelson, then resident in said Fayetteville, to him or order, for three thousand dollars, fifty-five cents, dated September 10, 1825, payable on demand with interest; on which note was endorsed, January 22, 1826, $490 ; and February 16, 1826, $1,410 ; and the cashier gave the said Stephen L. Gordon a receipt, which stated that the note was received "as evidence in part of the debt due from said Nelson to said Stephen L. Gordon."

About a month after the delivery of the note of $3000 55, by Stephen L. Gordon to the bank, H. G. Nelson was at Exeter, on the Sabbath only, and secretly, to avoid an arrest for debt; and had an interview with the cashier of the bank, and an estimate was made of the amount due on the note of $3000 55; and Nelson ageed that if the bank would procure from John Gordon a discharge of any claim John Gordon might have against him, he would pay to the Exeter bank the amount found due, by two acceptances of E. E. Lewis, whom he represented to be, and who was proved to be, a man of property, each for half the amount, one payable in five, the other in seven months, and the cashier of the bank agreed to receive these acceptances in payment. This arrangement was, within twenty-four hours, communicated to Stephen L. Gordon and John Gordon, who made no objection, and John Gordon made such a discharge of his claim as Nelson required.

The note of $3000 55 was not presented to Nelson except on the said Sabbath. No acceptances of E. E. Lewis were ever received by the bank, and it appeared that Stephen L. Gordon wrote to Nelson, who had been his partner in business, requesting him not to pay the balance of the note of $3000 55 to the Exeter Bank until he had paid a small note, he, Gordon, held against said Nelson.

The cashier having repeatedly written to H. G. Nelson for payment without effect, in the autumn of 1828, the note of $3000 55 was sent to Fayetteville, where Nelson continued to reside, for collection. The attorney to whom the note was sent, declined to undertake its collection, on account of a family connection with Nelson, and the note was then sent to William F. Strange, Esq., who testified that in January, 1829, he received a letter from Jeremiah Smith, Esq., the president of the bank, bearing date the 24th of December, 1828, enclosing the note of $3000 55, and that agreeably to his instructions, he caused a writ to be issued in the

name of the Exeter Bank against Nelson, and that at the December term, 1829, he obtained a judgment in said suit, in favor of the bank, against Nelson, for the sum of $1,451 35 debt, and $14 35 costs ; and that the execution which issued on the judgment was returned at the March term, 1830, unsatisfied ; and that he believed Nelson was insolvent at the time of issuing the writ ; and that he had so informed the plaintiffs ; and that after the issuing of the execution, Nelson notified him, as the attorney of the bank, that he should apply to the next court, which would be in session in June then next, to be permitted to take the benefit of the laws made for the relief of insolvent debtors : That about the time of the service of said notice, he had a conversation with Nelson respecting a compromise of the debt, and that he corresponded with the officers of the Exeter Bank on the subject ; and that pursuant to instructions from the bank he did compromise the judgment against Nelson, by obtaining security from him for one half of the amount of said judgment, by two notes for $390 54 each, payable in nine and twelve months, and as the attorney of the bank discharged the judgment against Nelson.   It further appeared in testimony, that the compromise made by the Exeter Bank with Nelson was made without the consent of the defendant, or of Stephen L. Gordon, or of John Gordon, and that previous to the making of the compromise, John Gordon was applied to by the Bank to give his consent to said compromise, and that he refused ; and that neither the defendant nor Stephen L. Gordon was consulted on the subject.

It further appeared, that though H. G. Nelson was considered industrious and enterprising, he was insolvent in 1825, and always afterwards until his death, and that his notes from 1825 would not be discounted at the banks : That he was a difficult man to collect a debt from :  That his property

was all mortgaged and assigned, so that a debt could not have been collected out of his property by an execution at law, and that his creditors have not, on an average, received fifty per cent. of their debts.

It further appeared, by the testimony of said Strange, that by the laws of North-Carolina, property cannot be attached on mesne process, unless the debtor absconds or so conceals himself that the regular process of law cannot be served upon him : That the adjustment made by the Exeter Bank was a prudent one, and favorable to the holders of the claim and whoever might be interested in it : That from his knowledge of Nelson and his circumstances, he did not believe the Exeter Bank would ever have received a cent if coercive measures had been resorted to, from the facts that on the 18th of August, 1828, Nelson made a deed of trust of all his property, for the payment of debts in the banks of Fayetteville and other creditors, but making no provision for the debt due the Exeter Bank : That after execution was issued against him, he notified said Strange, as agent of the bank, of his intention to take the benefit of the laws made for the relief of insolvent debtors ; and that the property under the control of the trustee, when sold, only brought the small sum of five hundred nineteen dollars, fifty cents. It also appeared, by the testimony of said Strange, that in his belief the course pursued by the Exeter Bank was not only a prudent one and resulted favorably, but that a contrary course would have prevented the collection of a single cent.

A verdict was taken, by consent, for the plaintiffs, subject to the opinion of the court upon the foregoing case.

*Sullivan,* for the defendant. The bank received Nelson's note from S. L. Gordon to collect and apply the proceeds to the payment of the debts due from the Gordons to the bank. And the bank having made the note its own, by its negligence, the note is payment *pro tanto* of debts due to the bank from the Gordons.

It was the duty of the bank to present the note in a reasonable time to the maker ; and, if not paid, to give notice of the non-payment to S. L. Gordon.

The cashier saw Nelson about a month after the note was delivered to him ; but it was upon the Sabbath, and no demand or presentment could be legally made on that day. *Chitty on Bills* 341.

It is no excuse for the non-presentment of the note to Nelson that he lived out of the state. His place of residence was known, and the bank was bound to make a demand there. *Bayley on Bills* 127 ; 14 *Johns.* 114, *Anderson* vs. *Drake ;* 2 *Strange* 1087, *Collins* vs. *Butler ;* 7 *East* 385, *Parker* vs. *Gordon ;* 9 *Wheaton* 598, *M'Gruder* vs. *The Bank of Washington.*

No notice was ever given to S. L. Gordon that the note had been presented to Nelson, and that he had neglected or refused to pay it.

Where a man receives a note for a preceding debt, and keeps it by him without taking the necessary steps to collect it, it amounts to payment of such preceding debt. 2 *L. Raymond* 928, *Ward* vs. *Evans ;* 2 *Salkeld* 442, *S. C. ;* 2 *Wilson* 353, *Chamberlyn* vs. *Delarive ; Chitty on Bills* 125 ; 3 *Taunton* 130, *Bridges* vs. *Berry ; Andrews R.* 187, *Smith* vs. *Wilson ;* 1 *Cowen* 711, *Woodcock* vs. *Bennet ;* 5 *Johnson* 68, *Tobey* vs. *Barber.*

*Bartlett,* for the plaintiffs. The question is, whether the mortgage under which the plaintiffs claim the goods mentioned in the declaration has been satisfied and discharged by the drafts and note delivered to the bank by S. L. Gordon ?

Before the statute of the 4 and 5 *Anne, ch.* 9, *sec.* 7, when a bill or note was received on account of a debt, but there was no contract, that it should be a discharge, it was held to be no payment, unless the creditor received the money, even when he had neglected to demand payment, or give

notice of its dishonor. 2 *Starkie's Ev.* 307 ; 1 *Salkeld* 124, *Clark* vs. *Mundal ;* 3 *Salkeld* 68, *S. C.*

But the said statute of the 4 and 5 *Anne, ch.* 9, *sec.* 7, provides, "that if any person accept a bill of exchange for ' and in satisfaction of any former debt, &c., this shall be ac- ' counted and esteemed a full and complete payment of such ' debt, if such person do not take his due course to obtain ' payment." *N. H. Prov. Laws* 225 ; 5 *D. & E.* 517.

Under this statute it must appear that the plaintiffs agreed to take the drafts and note in satisfaction. 5 *D. & E.* 513, *Kearslake* vs. *Morgan.*

And such an agreement is not binding, if the note re- ceived turn out to be of no value, unless the creditor spe- cially agreed to take the risk. 6 *D. & E.* 52, *Puckford* vs. *Maxwell ;* 7 *D. & E.* 64, *Owenson* vs. *Morse ;* 1 *Espin. N. P. C.* 3, *Stedman* vs. *Gooch.*

Nor if it be void for want of a stamp. 1 *Espin. N. P. C.* 245, *Wilson* vs. *Kennedy ;* 1 *East* 58, *note ;* 4 *Taun- ton* 288, *Wilson* vs. *Vysar.*

A note thus received is not presumed to be received in satisfaction. 1 *N. H. R.* 281, *Wright* vs. *The F. C. W. Company ;* 2 *N. H. R.* 336.

And if there be no agreement to take the risk, and the note turns out to be worth nothing, it is no payment. 4 *Campbell* 256, *Marsh* vs. *Pedder ;* 1 *Holt* 72, *S. C. ;* 2 *Campbell* 381, and 515.

If a bill of exchange is not accepted, an action will lie upon it against the drawer, before the time when it is made payable. *Douglas* 55, *Milford* vs. *Mayor ;* 3 *East* 481, *Ballingalls* vs. *Gloster.*

If a buyer pays for goods by a bill which the drawee re- fuses to accept, and afterwards desires it may be again pre- sented, and it will be accepted, the holder is not bound again to present it, nor to return it. 7 *Taunton* 312, *Hickling* vs. *Hardy ;* 4 *Bingham* 454, *Burden* vs. *Halton.*

In assumpsit on a charter party, freight to be paid partly

in cash and partly by approved bill, the owner took, without apprising the defendants, a bill from the consignee of the cargo for part of the freight, which was dishonored: It was held, that the defendants were not discharged from the amount of the bill. 1 *Moody and Malkin* 28, *Taylor* vs. *Briggs.*

A promissory note of a third person, taken for goods sold and delivered, is no payment, unless the vendor specially agree to take it absolutely as payment. 9 *Johnson* 310, *Johnson* vs. *Weed;* 7 *ditto.* 311, *Schemerhorn* vs. *Loines;* 3 *John. Cases* 72, *Herring* vs. *Sanger;* 5 *John.* 68, *Tobey* vs. *Barber;* 4 *John.* 296, *The People* vs. *Howell;* 1 *Cowen* 359 and 385 and 290; 8 *ditto,* 77, *Hughes* vs. *Wheeler;* 2 *John. Cases* 638, *Murray* vs. *Gouverneur;* 5 *Day* 511; 5 *Conn. R.* 71; 3 *ditto,* 377; 7 *Cranch* 299.

So a forged note is no payment; nor is a note, fraudulently passed, a payment. 2 *John.* 455, *Markle* vs. *Hatfield;* 6 *John.* 110, *Wilson* vs. *Force.*

A draft delivered in payment is no satisfaction, unless accepted and paid. 5 *N. H. R.* 378, *Whitney* vs. *Abbott;* 4 *ditto,* 492.

How, and for what, and under what agreement were the drafts and notes received by the cashier of the bank? Stephen L., John S. and John Gordon were indebted to the bank. On the 9th of February, 1826, Stephen L. Gordon endorsed two drafts on Nelson to the bank; "the net proceeds of which drafts, after deducting all expenses, charges and commissions, were to be applied to the payment of such of the debts due to the bank as the directors should select."

This not only shows that it was not agreed that the drafts should be received in payment, but that the agreement was that they should not be payment of any debt until collected; and then only of such as the directors should select. If the whole amount had been collected by the bank before this suit was commenced, or if the bank had, by its negligence,

become answerable for the whole amount, this defendant could not avail himself of it; because the directors have never applied it to satisfy the note mentioned in the mortgage. If the directors refuse to apply it, S. L. Gordon may have his remedy. There is no set-off here. There could be none. The directors are answerable to S. L. Gordon alone.

But nothing was received from Nelson when this suit was commenced. And if the $781 08, since received, shall be applied by the directors to the debts due from the Gordons, it leaves all the balance now claimed.

Has the bank so conducted, as to become answerable for the whole amount of the Nelson debt to S. L. Gordon, or any one else?

The note of Nelson was delivered to the bank as a pledge, with authority to collect and apply the proceeds to the payment of debts due to the bank from the Gordons. And all that could be required of the bank was ordinary diligence to avail themselves of the proceeds. 8 *D. & E.* 451, *Tapley* vs. *Martins;* 2 *B. & P.* 518, *Brown* vs. *Kewley;* 1 *Holt* 72, *Marsh* vs. *Pedder.*

The question is not whether S. L. Gordon would be liable as the endorser of Nelson's note, but whether the bank by its negligence has made that debt its own.

The bank did all that could be done to secure that debt.

The conduct of S. L. Gordon in directing Nelson not to pay the bank, until another note was paid, estops him from charging any failure of collection upon the bank.

The assent of S. L. Gordon to the arrangement made between the bank and Nelson, in September, 1826, as to the two acceptances of E. E. Lewis, was a waiver of all claim to notice. 6 *Pickering* 80, *Barker* vs. *Parker;* 12 *Mass. R.* 502, *Hurd* vs. *Little;* 6 *J. B. Moore* 319, *Patterson* vs. *Beecher;* 5 *N. H. R.* 378, *Whitney* vs. *Abbot;* 3 *ditto,* 346, *Otis* vs. *Hussey;* 2 *ditto,* 340, *Ladd* vs. *Kenney.*

But the bank discharged the judgment against Nelson

upon receiving one half the amount. Who suffers by this, and to what extent? Nelson's note was not received in payment, but as a pledge, with authority to collect and apply the proceeds when collected. If the bank has misconducted, it is a matter between themselves and S. L. Gordon; and does not pay John Gordon's debt.

But if the question were now between the bank and S. L. Gordon, what would be his complaint against them as his agents?

That they lost him the demand against Nelson? If so, let them answer to him.

Surely, the bank had motive enough to fidelity in the collection. All other security was gone. He intrusted them to do the best they could, and that they have done.

But suppose the bank had no right to release the judgment, and that it was a violation of the trust reposed in them. It does not make the debt their own. If they have improperly converted the pledge, they are only answerable for the damages actually sustained through their wrongful act. And this is nothing. They have obtained $781 for what was of no value in any other form.

*Sullivan,* in reply. It is said that the plaintiffs received the note against Nelson as the agents of S. L. Gordon, and they were to collect it merely as agents. This objection was taken in the case cited from 2 *Wilson* 353, where a bill of exchange was drawn to pay a demand for labor. The court said the plaintiff did not receive the bill as agent. He had an interest in it, and when received it would go to pay his own debt. Precisely the same thing may be said in this case. It is apparent that the plaintiffs were not agents of S. L. Gordon. They were endorsees, and have uniformly acted as such, and ought to be estopped from denying it.

But suppose they were agents of S. L. Gordon, they were bound to use the utmost diligence and care in the execution of the trust. *Paley on Agency* 5. What would be said of

an agent who should neglect to present a note in behalf of an endorsee to the maker two or three years?

The circumstance that the note was not endorsed to the bank until long after it was payable, is wholly immaterial. They were bound to use the same diligence as if it had been endorsed before it was payable. 9 *Johnson* 121, *Berry* vs. *Robinson.*

Cases have been cited to show that the endorser may waive his right to notice. But there is no evidence in this case that the endorser ever waived his right to notice.

It is said that the Nelson note was not received in payment. But this note was substituted for the drafts, and received on the same terms. What were those terms? Why, that the proceeds should be applied to such debts as the directors should select. And there were no debts besides those included in the judgment against the Gordons. It was perfectly understood that the note was endorsed to the bank in payment of the demands included in that judgment, and it was more than sufficient to satisfy that judgment.

It is said, that Stephen L. Gordon wrote to Nelson not to pay the note until he had paid another note Stephen held against him. But such a letter could have no effect in preventing, or even in delaying, the payment of the note. The note was endorsed to the plaintiffs, and they could have prosecuted it when they pleased.

It has been urged, that if Stephen L. Gordon has lost any thing by the negligence or misconduct of the bank, he has his remedy against them. But however that may be, still this defendant has a right to show that the debt, to secure which the mortgage was given, has been paid. As to S. L. Gordon's suing the bank for negligence, the same might have been said in all the cases that have been cited where laches in not collecting demands has been held to amount to payment of the original demands on account of which they were endorsed. There is no way in which Stephen L. Gordon can obtain redress but by insisting that the bank has

made the debt its own, and that it amounts to a payment of the demands on account of which it was endorsed.

Exeter Bank<br>*vs.*<br>Gordon.

By discharging the judgment against Nelson the bank have become accountable for the whole amount of the debt.

It is analogous to the case of an executor or administrator, who compounds a debt due to the estate of the deceased, and who is to be charged for the whole debt, although he may not have received the whole. *Bacon's Ab. " Executors and Administrators" ;* 9 *Mass. R.* 352 ; 7 *Johnson* 404, *De Diemar* vs. *Van Wagenen.*

Where a note is delivered as security for a debt, the pawnee has no right to sell the pledge. The only power he has is to receive the whole money from the maker of the note. 2 *Caines' Cases* 200, *Cortelyou* vs. *Lansing ;* 12 *John.* 146, *Garlick* vs. *James ;* 2 *Johnson's Cases* 424, *Armstrong & a.* vs. *Gilchrist ; Paley on Agency* 220 ; 7 *Pickering* 244, *Deland* vs. *The A. W. & C. M. Company.*

And if he receive less than the amount, he will be liable for the whole, although he may have acted with good faith.

If the bank in this case had given day of payment to Nelson, S. L. Gordon, the endorser, would have been discharged. *Bayley on Bills* 223.

And the compromise made with Nelson in this case is a discharge of S. L. Gordon as endorser. 4 *B. & C.* 506, *Lewis* vs. *Jones.*

If where a note is endorsed on account of a preceding debt, a mere neglect to demand payment, or to give notice, will make it a payment, much more will a discharge of the note.

The defendant is a surety, and if compelled to pay, he will have no remedy over against S. L. Gordon, his principal, who is discharged.

RICHARDSON, C. J., delivered the opinion of the court.*
With respect to the two drafts upon H. G. Nelson, en-

---

* PARKER, J., having formerly been of counsel did not sit.

dorsed and delivered to the cashier of the bank by Stephen L. Gordon, there seems to have been no neglect on the part of the bank. The drafts were duly presented and protested for non-acceptance, and notice of the non-acceptance given to S. L. Gordon. This was all the bank was bound to do. The acceptance having been refused, it was not necessary to present the drafts for payment. *Bayley on Bills* 215 ; 3 *John.* 202, *Mason* vs. *Franklin ;* 8 *Mass. R.* 460, *Lenox* vs. *Cook ; Douglas* 55, *Milford* vs. *Mayor ;* 3 *East* 481, *Ballingalls* vs. *Gloster.*

Nelson's note, which was endorsed and delivered to the cashier by S. L. Gordon, it is conceded in the argument, was delivered upon the same terms as those upon which the drafts had been delivered. The bank was to collect it and apply the proceeds to the payment of such debts of the Gordons as the directors should select. If that debt has been lost by the negligence of the bank, it is tantamount to a receipt of the money by the bank, and it ought perhaps to be considered as a payment, *pro tanto*, of the judgment in favor of the bank against the Gordons : because that judgment includes all the demands to which it could have been rightfully applied in payment.

What duties then were imposed upon the bank by taking the note ? S. L. Gordon had previously delivered to the bank drafts for the money due on the note, which drafts Nelson had refused to accept. The note itself was then delivered to the bank to collect. The question now to be settled is, not whether the bank did enough to enable them to charge S. L. Gordon as endorser, or whether under the circumstances he could have been made liable as endorser ; but whether the bank has so conducted as to make the note its own, so that it must now be considered as payment in part of the debts on account of which it was received.

The bank was bound to use ordinary diligence ; but it was not bound to send a special messenger to secure the

debt, or to send the note to be sued immediately, unless it contracted so to do. The case states that the cashier frequently wrote to Nelson for payment ; and it does not appear that the bank contracted to do any thing more than this.

But the assent of S. L. Gordon to the arrangement made soon after the bank took the note, between the cashier and Nelson, as to the acceptances of E. E. Lewis, is a decisive answer to any complaint on the part of S. L. Gordon of the delay in commencing the suit against Nelson. How long it was before that arrangement was ascertained to have failed does not appear. But Gordon, having assented to that course to secure the debt, has no ground of complaint that a suit was not sooner commenced.

Besides, Stephen L. Gordon having written to Nelson not to pay the note which the bank had until another note was paid, he ought to be estopped to say the note has been lost by the negligence of the bank. For aught that appears, the bank may have as good ground to say that they were precluded from receiving the money by his interference, as he has to say that any thing has been lost by their negligence.

There is then nothing in the case which shows that the bank has by its negligence made the note its own ; and this ground of defence fails entirely.

The next question is, whether the bank has made the note its own by the compromise, so that it must now be considered a payment in part of the notes on account of which it was received ?

It is very manifest that the note must be considered as placed in the hands of the cashier as a pledge, or security, with authority to collect and apply the proceeds to the payment of debts due to the bank.

It is without doubt a well settled general rule, that the pledgee has no right in such a case to compromise for a less sum than the sum due on the face of the security. *Story on Bailment* 214; 15 *Mass. R.* 534, *Bowman* vs. *Wood ;* 12 *Johnson* 146, *Garlick* vs. *James.*

There are, however, exceptions to this rule. But admiting, for the present, that the general rule is applicable to this case, the question will then be, has the wrongful act made the bank accountable for the whole sum due on the note, or only for the value of the note?

There seems to be no reason to suppose that the compromise was not, on the whole, highly advantageous to the Gordons and the bank. And the complaint of this defendant is, not that any thing was in fact lost by it, but that it was made without authority.

If the bank had wrongfully taken the note and converted it to their own use, they would have been answerable only for the value. 2 *Caines' Cases* 215; 3 *Mass. R.* 364; 4 *Greenleaf* 274; 12 *John.* 484, *Clowes* vs. *Hawley*; 2 *B. & P.* 451; 3 *John.* 432; 10 *ditto*, 172 and 471; 3 *Starkie's Ev.* 1503; 8 *Taunton* 264; 1 *Cowen* 240; 1 *Pick.* 503; 17 *Mass. R.* 247; 6 *Greenleaf* 226; 1 *Barnw. and Adolphus* 528; 1 *C. & P.* 625; 10 *Pick.* 415.

And we are of opinion, that if the compromise in this case is, under the circumstances, to be considered as a wrongful disposition of the note, which was lawfully in the possession of the bank, it cannot and ought not to place the bank in a worse situation than it would have been, if the note had been wrongfully taken from the possession of the owner and converted to the use of the bank.

It is said that this case is analogous to the case of an executor or administrator, who compounds a debt due to the estate of the deceased for less than the amount. But how is the law in such a case? The general rule is, that a release of a certain debt due to the testator makes it assets in the hands of the executor, because it shall be intended he would not have made the release unless the money had been paid.

And it seems to have been holden, in former times, that a release in such a case was conclusive evidence that the executor had received the money; and he was chargeable

with the whole amount, although he might have received only a part.

*Lovelass on Wills* 48; 4 *Pickering* 50; *Wentworth's Executor* 70—71, and 158—159; *Comyn's Digest, "Administration"* I, 1 and 2; *Cro. Eliz.* 43; *T. Jones* 88; 2 *Levintz* 189; 9 *Mass. R.* 352.

But in modern times, a more reasonable and equitable view of the subject seems to have been gaining ground. In many cases, an executor can obtain nothing unless by way of compromise; and it is supposed that no court would now hold an executor liable for the whole debt in a case where he had, upon a compromise on the whole advantageous to the estate, released the debt on receiving a part; for that would be to make him liable for the whole, merely because by his care and diligence he had been able to save a part. 2 *Eq. Ca. Ab.* 454, *pl.* 13; 3 *P. Williams* 381; 7 *John.* 411—412.

If, then, we follow that analogy in this case, we must hold that the bank is liable only for what it received, if the compromise was on the whole advantageous to all concerned.

A release by the endorsee of a note to the maker is a bar to an action against the endorser, if made without his assent, even in cases where made upon a compromise which might be beneficial to the endorser. But this depends upon the particular nature of the relations which subsist between the parties to negotiable instruments. The endorsee is not in such a case the agent of the endorser. And the release, to be effectual to the maker, must be a release to the endorser, who might otherwise have a remedy over against the maker.

On the whole, we are of opinion that if the bank had not, under the circumstances, authority to make the compromise, still it has not made itself responsible for the whole amount of the note, so as to make it payment of the note mentioned in the mortgage.

If Stephen L. Gordon has sustained any damage by the

compromise, he may have his remedy. But we find no principle that can render the bank accountable for the whole amount of the Nelson note, unless the part not received can be considered as lost by the course they have pursued.

It is by no means clear, that under the circumstances the bank had not a right to make the compromise. Story, in his treatise on bailment, says a pledgee has no right, unless perhaps in a very extreme case, to make a compromise. *Story's Bailment* 214. This was perhaps an extreme case. Nelson was insolvent. Nothing could be collected by process of law. In such a case, the delivery of the note to the bank, to be collected without any restriction, affords a fair ground to presume that a power to compromise was intended to be given. And this presumption is greatly strengthened by the circumstance that the Gordons were also insolvent, and that it was the interest of the bank to make the most of the note against Nelson.

But however this may be, we are of opinion that there must be

*Judgment on the verdict.*